UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
MARIE DeVITO,

                Plaintiff,        <u>MEMORANDUM & ORDER</u>
                                    09-CV-0287(JS)(ARL)
      -against-

VALLEY STREAM CENTRAL HIGH SCHOOL
DISTRICT, MARC F. BERNSTEIN, JOHN
LaBARE, KATHLEEN WALSH, JOSEPH
POMPILIO and MAUREEN HENRY,

                Defendants.
----------------------------------X
APPEARANCES:
For Plaintiff:       Robert B. Kronenberg, Esq.
                The Law Office of Robert B. Kronenberg
                1355 Motor Parkway
                Hauppauge, NY 11749

For Defendant:      Lewis R. Silverman, Esq.
                Julie Ann Rivera, Esq.
                Rutherford & Christie, LLP
                369 Lexington Avenue
                New York, NY 10017

SEYBERT, District Judge:

In this employment discrimination case, Plaintiff Marie DeVito ("Plaintiff") alleges that she was the victim of retaliation and "gender-plus" employment discrimination by her employer, Defendant Valley Stream Central High School District ("Valley Stream") and others. She asserts claims under Title VII of the Civil Rights Act of 1964 ("Title VII") and Section 1983 of Title 42 of the United States Code ("Section 1983"). For the following reasons, Defendants' summary judgment motion is GRANTED.

Plaintiff has worked at Valley Stream since 1993, first as a "cleaner" and later as a "custodian."[1] (Def. 56.1 Stmt. ¶¶ 1-3.) Since 2005, she has been assigned to the night shift at Memorial Junior High School ("Memorial Junior"). (Id. ¶ 4.) The Defendants in this case are Valley Stream, Plaintiff's employer; Marc Bernstein, Valley Stream's Superintendent; John LaBare, at relevant times Valley Stream's Director of Facilities and Operations; Kathleen Walsh, Memorial Junior's principal; Joseph Pompilio, the principal of Central High School ("Central High"), a school within the Valley Stream district; and Maureen Henry, principal of South High School ("South High"), another Valley Stream school. (Id. ¶¶ 5-9.)

I.   The Assistant Head Custodian Position

In September 2007, Valley Stream began the process of hiring three new "Assistant Head Custodians" ("AHCs") who would each be responsible for supervising the night cleaning crews at their respective schools. (Id. ¶¶ 16-17.) Valley Stream sought to hire AHCs for Memorial Junior, Central High and South High. (Id. ¶ 18.) Including Plaintiff, five candidates--all of whom were already employed by Valley Stream--applied for the job.

---

[1] Plaintiff disputes whether the change in her title from cleaner to custodian constituted a promotion. For the purposes of this discussion, the distinction is irrelevant.

(Id. ¶¶ 19-21.)

Valley Stream formed a committee (the "Committee") to evaluate the five AHC candidates. The Committee had five members: Wayne Loper (Valley Stream's Assistant Superintendent for Finance and Operations and a non-party to this suit), LaBare, and the principals of the three schools seeking new ACH's--Pompilio (Central High), Walsh (Memorial Junior), and Henry (South High). The Committee interviewed all five candidates on the same day; Plaintiff remembers that she was asked questions concerning how she would motivate her crew and "mostly supervisory questions." (Id. ¶¶ 26-28, 33.)

Plaintiff was not promoted to ACH. Principal Pompilio wanted Ronald Heganeh for Central High, where Heganeh had already been working as the acting Assistant Head Custodian. (Id. ¶¶ 33-34.) For Memorial Junior--where Plaintiff worked at the time--principal Walsh sought someone who was not already assigned to the school because she was concerned that an AHC promoted up from Memorial Junior's ranks would have trouble getting her former colleagues to work hard. (See id. ¶¶ 37-38.) Walsh chose Johanna Murphy, who, according to Defendants, impressed the Committee as a leader. (See id. ¶ 39.) That left one spot--South High--and three candidates--Plaintiff, Timothy Laukitis and Jack Rogawski (of all the candidates, Rogawski

scored lowest on the civil service exam and was the only one never to have served as acting Assistant Head Custodian (Pl. Ex. 4, Exam Results; Pl. Ex. 24, LaBare Dep. at 53)). South High's principal, Maureen Henry, chose Laukitis. According to Defendants, Henry felt that Laukitis was more confident and less hesitant than Plaintiff in his interview (id. ¶¶ 43, 44) and, in general, the Committee thought Plaintiff did not have the same leadership potential as her competition (id. ¶ 46).

The Committee ultimately recommended Heganeh, Murphy and Laukitis to Superintendent Bernstein, and these three were promoted to AHC. (Id. ¶¶ 47-48.)

## II. Plaintiff's Feminine Appearance

Plaintiff, who had scored higher than Murphy on the civil service exam, (Pl. 56.1 Cntr-Stmt. ¶ 19), met with LaBare after the promotions were made to ask why she was not chosen. (Def. 56.1 Stmt. ¶ 49.) LaBare explained that Plaintiff "did not present as an authoritative figure." (Def. Ex. C, Plaintiff's Dep. at 43.) In response, Plaintiff offered to change her appearance, including by changing her nail polish and wearing less makeup. (Def. 56.1 Stmt. ¶ 51.) Superintendent Bernstein later admitted to Plaintiff that LaBare chose his words poorly when he said "authoritative figure." (Pl. 56.1 Cntr-Stmt. ¶ 54.)

In Plaintiff's view, LaBare's explanation that Plaintiff did not present as an authoritative figure was a veiled way of saying that Plaintiff's appearance was too feminine for a supervisory position, especially as compared with that of Johanna Murphy, the female candidate who was promoted over Plaintiff. (See Compl. ¶ 32; Pl. 56.1 Cntr-Stmt. ¶ 57.) Plaintiff "wears attire and makeup" that "accentuate[s] her femininity." (Compl. ¶ 32; see also Pl. 56.1 Cntr-Stmt. ¶ 45.) By contrast, according to Plaintiff, Murphy's appearance was "matronly" and her "manner of personal of grooming does not accentuate femininity." (Pl. 56.1 Cntr-Stmt. ¶ 58; Compl. ¶ 33.)

II.  Plaintiff's Prior Lawsuit

In addition to the perceived difference between her appearance and Murphy's, Plaintiff alleges that an earlier sexual harassment lawsuit against Valley Stream was a reason why she was not promoted. In 1994, Plaintiff sued Valley Stream, alleging that when Plaintiff was a new hire, her immediate supervisor threatened not to let her off probation in retaliation for Plaintiff's spurning the supervisor's sexual advances. (Pl. 56.1 Cntr-Stmt. ¶¶ 1-2.) The suit was settled confidentially in 1997. (Id. ¶ 3.) In September 2007-- approximately ten years after the prior suit was settled and the

same month that Valley Stream began its search for new AHCs, LaBare approached Plaintiff and asked her about her prior lawsuit. (Id. ¶¶ 4-6.)

DISCUSSION

Plaintiff asserts three causes of action: (1) a Title VII gender-plus discrimination claim that she was not promoted due to her feminine appearance; (2) a Title VII retaliation claim that she was not promoted because of her earlier lawsuit; and (3) a Section 1983 claim for discrimination and retaliation. For the reasons that follow, Defendants' motion for summary judgment is granted in its entirety.

## I.  Legal Standard on Summary Judgment

Summary judgment is only appropriate where the moving party can demonstrate that there is "no genuine dispute as to any material fact" and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). In considering this question, the Court considers "the pleadings, depositions, answers to interrogatories and admissions on file, together any other firsthand information including but not limited to affidavits." Nnebe v. Daus, __ F.3d __, 2011 WL 2149924, at *6 (2d Cir. May 31, 2011); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265, 273 (1986); McLee v. Chrysler Corp., 109 F.3d 130, 134 (2d

Cir. 1997); FED. R. CIV. P. 56(c). "In assessing the record to determine whether there is a genuine issue to be tried . . . the court is required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." McLee, 109 F.3d at 134. The burden of proving that there is no genuine issue of material fact rests with the moving party. Gallo v. Prudential Residential Servs., L.P., 22 F.3d 1219, 1223 (2d Cir. 1994) (citing Heyman v. Com. & Indus. Ins. Co., 524 F.2d 1317, 1320 (2d Cir. 1975)). Once that burden is met, the non-moving party must "come forward with specific facts," LaBounty v. Coughlin, 137 F.3d 68, 73 (2d Cir. 1998), to demonstrate that "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," Anderson, 477 U.S. at 257, 106 S. Ct. at 2514-15, 91 L. Ed. 2d at 218. "Mere conclusory allegations or denials will not suffice." Williams v. Smith, 781 F.2d 319, 323 (2d Cir. 1986). And "unsupported allegations do not create a material issue of fact." Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000).

Courts are cautious in awarding an employer summary judgment in cases where its intent--i.e., its alleged discriminatory motive--is an issue. McLee, 109 F.3d at 135. Nevertheless, summary judgment is warranted where the

plaintiff's case is wholly lacking in genuine questions of
material fact. Id. As discussed below, this is one such case.

II. <u>Defendants are Entitled to Summary Judgment</u>

The Court addresses each of Plaintiff's causes of
action in turn.

A. <u>Title VII Discrimination</u>

Plaintiff's Title VII claim that she was not promoted
because her appearance was too feminine is analyzed using the
familiar burden-shifting framework first set forth in <u>McDonnell</u>
<u>Douglas Corp. v. Green</u>, 411 U.S. 792, 802-04, 93 S. Ct. 1817, 36
L. Ed. 668 (1973). In this analysis, Plaintiff has the burden
of establishing a prima facie case of discrimination, at which
point the burden shifts to Defendant to articulate a legitimate,
non-discriminatory reason for its conduct. If Defendant can do
so, the burden shifts back to Plaintiff to show that Defendant's
proffered reason was simply a pre-text for unlawful
discrimination. See <u>Clayborne v. OCE Bus. Svcs.</u>, 381 Fed. Appx.
32, 33-34 (2d Cir. 2010).

The Court is skeptical that Plaintiff can even show a
prima facie case of discrimination. The first stage of
<u>McDonnell Douglas</u> requires Plaintiff to show only that: (1) she
was a member of a protected class; (2) she was qualified for her
position; (3) she suffered an adverse employment action; and (4)

the adverse employment action occurred under circumstances giving rise to an inference of discrimination. See, e.g., Wolf v. N.Y. City Dept. of Educ., 708 F. Supp. 2d 327, 331 (S.D.N.Y. 2010). This is a slight burden, but the Court nevertheless doubts Plaintiff can establish an inference of discrimination arising from Defendants' decision not to promote her.

Plaintiff's theory wholly rests on LaBare's remark that Plaintiff is not an "authoritative figure," but this phrase does not suggest that LaBare thought Plaintiff was too feminine for an Assistant Head Custodian position. To be sure, "'stereotyped remarks can certainly be evidence that gender played a part' in an adverse employment decision." Back v. Hastings On Hudson Union Free Sch. Dist., 365 F.3d 107, 119 (2d Cir. 2004) (quoting Price Waterhouse v. Hopkins, 490 U.S. 228, 251, 109 S. Ct. 1775, 104 L. Ed. 2d 268 (1989)). But LaBare's remark does not reflect a gender stereotype in the same way, for example, that calling a female accountant "macho" or "masculine" or telling her she needed to "walk more femininely, talk more femininely, dress more femininely, wear make-up, have her hair styled, and wear jewelry." See Price Waterhouse, 490 U.S. at 235. Rather, Plaintiff's situation is akin to a professor who has been called "nice" and "nurturing"--as with these words, "authoritative figure" is not code for gender bias. See

9

_Weinstock_, 224 F.3d at 44. The weakness of Plaintiff's case is underscored by an utter lack of evidence that Defendants actually perceived her as more feminine-appearing than anyone else. There is no testimony from anyone other than herself that Plaintiff--to paraphrase her arguments in this case--embodied an accentuated femininity vis-à-vis the "matronly" Murphy.

In any event, even assuming Plaintiff can meet her prima facie burden, Defendants are still entitled to summary judgment because they have advanced a legitimate, non-discriminatory reason for denying Plaintiff the promotion--Plaintiff's lack of confidence in answering the Committee's questions--and Plaintiff cannot show that Defendants' proffered reason was merely a pretext for discrimination. See Fisher v. Vassar Coll., 66 F.3d 379, 393 (2d Cir. 1995) (report listing lack of leadership among tenure candidate's shortfalls provided legitimate reason for adverse employment action under McDonnell Douglas). On this point, the Court mentions again "nice" and "nurturing" because it finds Weinstock v. Columbia University instructive. 224 F.3d 33 (2d Cir. 2000). In that case, the Second Circuit explained that even if the plaintiff, a female professor, was referred to as "nice" and "nurturing" in a university's tenure committee meeting, she could not establish pretext because these adjectives are "simply not qualities that

are stereotypically female." Id. at 44. With respect to "nice," the court explained,

> Any reasonable person of either sex would like to be considered "nice." It is indefensible to conclude that an employer's use of the word "nice" evinces gender discrimination. Were it so, every time an employer said, "[Bob or Sue], you are a nice person and a hard worker, but I am going to have to let you go," such a statement would become a basis for a Title VII discrimination claim.

Id. at 44.

Weinstock's reasoning is easily translated to Plaintiff's case. Any reasonable person of either sex who is interviewing for a supervisory position would like to be considered an "authoritative figure," at least by those making the hiring decision. If Plaintiff were to survive summary judgment in this case, every time an employer told a female candidate she was not being hired as a supervisor because she was not an "authoritative figure," such statement would become a basis for a discrimination claim.

Of course unlike the professor in Weinstock, Plaintiff asserts a gender-plus claim. This does not change the outcome for two reasons. First, Weinstock's logic applies with equal force to female applicants and female applicants who, like Plaintiff, assert that they exude above-average femininity. In

11

each case, an applicant for a supervisory job would seek to be viewed as an "authoritative figure." Second, the Court reiterates that there is zero evidence that any of the Defendants perceived Plaintiff as more feminine than anyone else.

Accordingly, Defendants are entitled to summary judgment on Plaintiff's Title VII discrimination claim.

B.   Title VII Retaliation

Plaintiff also claims that LaBare denied her the promotion in retaliation for her 1994 sexual harassment lawsuit against Valley Stream. Defendants are entitled to summary judgment on this claim because Plaintiff has not produced any evidence showing that Defendants' reason for not promoting her was pretextual.

1.   Failure to Exhaust

As an initial matter, the Court rejects Defendants' argument that Plaintiff's Title VII retaliation claim is barred for Plaintiff's failure to exhaust her administrative remedies. As a general rule, plaintiffs are required to raise Title VII claims in an administrative complaint before filing a lawsuit. See, e.g., Williams v. N.Y. City Hous. Auth., 458 F.3d 67, 70 (2d Cir. 2006). Courts may, however, hear claims that although not raised in an EEOC complaint are "reasonably related" to the

substance of that underlying charge. Id. at 70. "[A] claim is considered reasonably related if the conduct complained of would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge that was made." Id. at 70 (quoting Fitzgerald v. Henderson, 251 F.3d 345, 359-60 (2d Cir. 2001)).

Plaintiff concedes that she did not explicitly indicate retaliation as a basis for her EEOC charge, but she argues that her retaliation claim is reasonably related to the discrimination charge she did file. The Court agrees. In the narrative statement of her EEOC Charge, Plaintiff speculates that her 1994 lawsuit may have been a reason for Defendants' decision not to promote her. An EEOC investigation that would have been expected to grow out of Plaintiff's EEOC Charge, therefore, would encompass Plaintiff's retaliation allegations. See Stuevecke v. N.Y. Hosp. Med. Ctr. of Queens, No. 01-CV-0326, 2003 WL 22019073, at *4 (E.D.N.Y. 2003) (information in narrative statement of plaintiff's EEOC charge--which only had the "discrimination" box checked--was relevant in determining that retaliation lawsuit was reasonably related to the EEOC charge).

2. Plaintiff's Claim Cannot Survive Summary Judgment

Title VII retaliation claims are also analyzed under

13

the McDonnell Douglas burden-shifting framework described above.
Gorzynski v. Jetblue Airways Corp., 596 F.3d 93, 110 (2d Cir.
2010). To establish a prima facie case, Plaintiff must show
"(1) that she participated in a protected activity, (2) that she
suffered an adverse employment action, and (3) that there was a
causal connection between her engaging in the protected activity
and the adverse employment action." Id.

Defendants chiefly argue that Plaintiff cannot show a
causal connection between her 1994 lawsuit and her 2007 job
interview. "[P]roof of causation can be shown either: (1)
indirectly, by showing that the protected activity was followed
closely by discriminatory treatment, or through other
circumstantial evidence such as disparate treatment of fellow
employees who engaged in similar conduct; or (2) directly,
through evidence of retaliatory animus directed against the
plaintiff by the defendant." Gordon v. N.Y. City Bd. of Educ.,
232 F.3d 111, 117 (2d Cir. 2000). The prima facie stage of the
McDonnell Douglas analysis requires Plaintiff to make only a
minimal showing, and the Court assumes—but does not decide--that
Plaintiff meets that burden here. The Court sets aside the
decade that elapsed between Plaintiff's protected activity and
the adverse employment action, and accepts for argument's sake
Plaintiff's argument that LaBare's asking Plaintiff about the

earlier lawsuit around the same time that the Committee recommended against promoting Plaintiff (and recommended instead a candidate--Murphy--who scored lower on the civil service exam than Plaintiff) amounts to a prima facie case of retaliation.

Where Plaintiff surely falls short, however, is in rebutting as pretextual the legitimate, non-discriminatory reason Defendants have proffered for not making Plaintiff a supervisor, namely their concerns about Plaintiff's ability to provide leadership to her cleaning crew. To establish pretext, Plaintiff must produce evidence tending to show that Defendants' proffered reasons for its actions were not the actual reasons, and that an impermissible consideration was one--although not necessarily the only--reason for their decision. See, e.g., Martin v. State Univ. of N.Y., 704 F. Supp. 2d 202, 231 (E.D.N.Y. 2010); Blanco v. Brogan, 620 F. Supp. 2d 546, 544 (S.D.N.Y. 2009).

Here, Plaintiff has produced no evidence--either through the testimony of a third party or through documents-- suggesting that anyone on the Committee considered Plaintiff's litigation history in not recommending her for an AHC slot. Plaintiff merely speculates that because LaBare asked her about her lawsuit (without commenting on it, either positively or negatively), the Committee must have denied Plaintiff a

promotion to retaliate against her for suing Valley Stream more than ten years prior. Plaintiff's unsubstantiated allegation is in the face of testimony from Committee members that is strongly to the contrary. (See Def. Ex. H, Loper Aff. ¶¶ 11, 12; Pl. Ex. 26, Walsh Dep. at 25 (principal testified that she had no knowledge of Plaintiff's earlier lawsuit until she was deposed in this case); Pl. Ex. 27, Pompilio Dep. at 32 (same); Pl. Ex. 28, Henry Dep. at 32 (same); see also Pl. Ex. 25, Bernstein Dep. at 30 (superintendent, who was not a Committee member but received Committee's recommendations concerning the AHC posts, testified that Plaintiff's prior lawsuit was "irrelevant to me").) Were this case to be tried, a jury would hear Plaintiff's bald allegations on one hand and Defendants' sworn testimony on the other. "Such a conflict does not raise a genuine issue of material fact; rather, it pits sworn testimony against speculation, conjecture and self-serving conclusions." Ghirardelli v. McAvey Sales & Service, Inc., 287 F. Supp. 2d 379, 391 (S.D.N.Y. 2003) aff'd 8 Fed. Appx. 909 (2d Cir. 2004) (granting defendant summary judgment where plaintiff offered no evidence that a lawsuit against a former employer was the cause of her firing by her subsequent employer).

Accordingly, Defendants are entitled to summary judgment on Plaintiff's Title VII retaliation claim.

C. Section 1983

Plaintiff also brings discrimination and retaliation claims under Section 1983.  A Section 1983 discrimination claim is analyzed using the same general framework as its Title VII counterpart, and Plaintiff's claim necessarily fails for the reasons discussed in part II.A, supra.  See Carmody v. Village of Rockville Centre, 661 F. Supp. 2d 299, 330 (E.D.N.Y. 2009) (adopting report and recommendation); Davis v. Oyster Bay-East, No. 03-CV-1372, 2006 WL 657038, at *8, n. 12 (E.D.N.Y. 2006).

Plaintiff's Section 1983 retaliation claim also fails. Plaintiff grounds this cause of action in the Equal Protection Clause of the Fourteenth Amendment, (Compl. ¶ 54), but retaliation claims based on the Equal Protection Clause are not cognizable in this Circuit.  See Bernheim v. Litt, 79 F.3d 318, 323 (2d Cir. 1996).  Construed as a First Amendment retaliation claim, Plaintiff's theory still fails because of the causation problems outlined in part II.B, supra.  See Hoyt v. Andreucci, 433 F.3d 320, 327 (2d Cir. 2006) (listing causation as an element of a First Amendment retaliation claim).

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED in its entirety. The Clerk of the Court is directed to enter judgment for Defendants and to mark this case CLOSED.

SO ORDERED.

/s/ JOANNA SEYBERT_____
Joanna Seybert, U.S.D.J.

Dated:    August __3__, 2011
          Central Islip, New York